1  LESTER J. MARSTON
   California State Bar No. 081030
2  THE LAW OFFICES OF RAPPORT AND MARSTON
   AN ASSOCIATION OF SOLE PRACTITIONERS
3  405 West Perkins Street
   Ukiah, California 95482
4  Telephone: 707-462-6846
   Facsimile: 707-462-4235
5  Email: ljmarston@rmlawoffice.net

6  *Attorney For Plaintiff Picayune Rancheria of the Chukchansi Indians*

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11
   PICAYUNE RANCHERIA OF THE          Case No.:
12 CHUKCHANSI INDIANS,
                                      **COMPLAINT FOR**
13                                    **DECLARATORY AND**
                    Plaintiff,        **INJUNCTIVE RELIEF**
14 v.
                                      25 U.S.C. § 2701 et seq.
15
   GAVIN NEWSOM, Governor of
16 California, and STATE OF
   CALIFORNIA,
17

18                  Defendants.

19

20                    **INTRODUCTION**

21        This is an action brought by the Picayune Rancheria of the Chukchansi Indians

22 ("Tribe") against the Governor of the State of California and the State of California.

23 The Tribe seeks an order from the Court declaring that the Governor and State

24 (collectively, the "State") violated the Indian Gaming Regulatory Act, 25 U.S.C. §

25 2701 *et seq*. ("IGRA"), by not engaging in good faith negotiations with the Tribe to

26 conclude a Tribal-State class III gaming compact, because the State demanded that

27 the Tribe include in its compact provisions that fall outside the permissible scope of

28 subjects that may be included in a compact. In addition, the Tribe seeks an order

                              1

from the Court declaring that the State's failure to negotiate a compact with the Tribe in good faith constituted a violation of California Constitution, Article IV, § 19(f) ("Cal. Const., art. IV, § 19(f)") and California Governor Code § 12012.25(d). The Tribe also seeks an order from the Court directing the State and the Tribe to comply with IGRA's remedial procedure where a state has been found to have failed to negotiate in good faith, pursuant to 25 U.S.C. § 2710(d)(7)(B)(iii)-(vii).

## JURISDICTION

1.      This Court's jurisdiction over the Tribe's claims is based upon the following:

(a)      28 U.S.C § 1331, in that this action arises under the Constitution and laws of the United States, specifically, IGRA;

(b)      28 U.S.C. § 1362, in that the Tribe is a federally recognized Indian tribe asserting that the State's actions violate the Constitution and laws of the United States, including federal common law;

(c)      25 U.S.C. § 2710(d)(7)(A)(i), in that this is an action brought by a federally recognized Indian tribe against the State alleging that the State has not conducted negotiations with the Tribe to conclude a Tribal-State Compact in good faith;

(d)      28 U.S.C. § 1367, in that the Tribe alleges that the State's actions violated Cal. Const., art. IV, § 19(f), and Cal. Gov. Code § 12012.25(d) and the alleged violations form part of the same case or controversy as claims that are independently within the Court's original jurisdiction, because the claims share a common nucleus of operative fact and arise from the same transaction or occurrence; and

(e)      The State has waived its sovereign immunity with regard to disputes between the State and the Tribe on the issue of whether the State engaged in good faith compact negotiations, Cal. Gov. Code § 98005. The State has also waived its sovereign immunity with respect to the Tribe's state law claims based on

the issue of whether the State engaged in good faith compact negotiations required by Cal. Const., art. IV, § 19(f), Cal. Gov. Code § 12012.25(d), and Cal. Gov. Code § 98005.

## VENUE

2.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that the Defendants reside within this District.

## PARTIES

3.    Plaintiff, Picayune Rancheria of the Chukchansi Indians, is a federally recognized Indian tribe, organized under a written Constitution, which designates the Picayune Rancheria Tribal Council as the governing body of the Tribe. The Tribe is the beneficial owner of the Picayune Rancheria ("Reservation"), which is located in Madera County, California.

4.    Defendant Gavin Newsom is the duly elected Governor and chief executive officer of the State of California and is sued in that capacity.

5.    Defendant State of California is a quasi-sovereign governmental entity and a state of the United States.

## GENERAL ALLEGATIONS PERTAINING TO IGRA

6.    In 1988, Congress enacted IGRA to create a framework for Indian tribes, states, and the federal government to regulate on-reservation tribal gaming.

7.    IGRA divides Indian gaming into three classes, with different regulatory requirements for each class. Class I gaming consists of traditional tribal games for prizes of minimal value connected with tribal ceremonies or celebrations. 25 U.S.C. § 2703(6). Class I gaming is within the exclusive regulatory jurisdiction of the tribes. Class II gaming consists of bingo, "whether or not electronic, computer, or other technological aids are used in connection therewith," including "pull tabs, lotto, punch boards, tip jars, instant bingo, and other games similar to bingo." 25 U.S.C. § 2703(7)(A)(i). Also included in class II gaming are non-banked card games either explicitly authorized by state law or not prohibited by state law and played in

conformity with state regulations regarding hours of play and limits on wagers and pot sizes. 25 U.S.C. § 2703(7)(A)(i)-(ii) and (7)(B). Class III gaming is defined as "all forms of gaming that are not class I gaming or class II gaming." 25 U.S.C. § 2703(8).

8.    Class III gaming is the most lucrative form of gaming. It includes the games played in a typical casino in Las Vegas, such as slot machines, craps, roulette, and house banked and percentage card games, like blackjack. Under Section § 2710(d)(1) of IGRA, in order for a tribe to be authorized to conduct class III gaming: (1) the tribe must have adopted a tribal ordinance that authorizes the playing of the class III games and the ordinance must have been approved by the Chairman of the National Indian Gaming Commission ("NIGC"), a federal regulatory agency created under IGRA; (2) the state in which the class III gaming will be conducted must "permit" such gaming for any purpose by any person, organization, or entity; and (3) the class III gaming must be conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the state, pursuant to 25 U.S.C. § 2710(d)(3).

9.    In order to go into effect, a tribal-state class III gaming compact must be approved by the Secretary of the Interior ("Secretary"), Section 2710(d)(8)(A), or deemed approved by operation of law, Section 2710(d)(8)(C), and notice of approval must be published in the Federal Register, Section 2710(d)(3)(B).

10.    Section 2710(d)(3) sets forth the process that a tribe and a state must follow in order to negotiate and enter into a compact. Section 2710(d)(3)(A) provides that, upon the request of a tribe, a state shall negotiate in "good faith" with the tribe to enter into a compact. If the state fails to bargain in good faith, after 180 days has passed since the tribe requested that the state engage in compact negotiations, the tribe can sue the state in federal court. 25 U.S.C. § 2710(d)(7)(A)(i). If the court finds that the state failed to negotiate in good faith, the district court "shall order" the state and tribe to conclude a compact within 60 days. 25 U.S.C. §

2710(d)(7)(B)(iii). If the parties do not reach agreement within the 60-day time period, they must engage in baseball style arbitration and submit their last, best offers to a court-appointed mediator, who chooses one of the two proposed compacts. 25 U.S.C. § 2710(d)(7)(B)(iv). If the mediator chooses the compact submitted by the state, it "shall be treated" as a tribal-state compact entered into by agreement of the parties. 25 U.S.C. § 2710(d)(7)(B)(vi). If the mediator chooses the compact submitted by the tribe, the state may consent to the selected compact or refuse to so consent. If the state does not consent to the proposed compact chosen by the mediator, the Secretary is notified of the State's refusal. The Secretary is then required to issue procedures regulating the tribe's gaming that are consistent with the selected compact, federal law, and the relevant provisions of state law. 25 U.S.C. § 2710(d)(7)(B)(vii).

11.    Section 2710(d)(3)(C) provides a list of seven subjects that a class III gaming compact negotiated between a tribe and a state may address. The seven subjects listed in Section 2710(d)(3)(C) are:

    (i)    the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity;

    (ii)    the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations;

    (iii)    the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity;

    (iv)    taxation by the Indian tribe of such activity in amounts comparable to amounts assessed by the State for comparable activities;

    (v)    remedies for breach of contract;

(vi)    standards for the operation of such activity and maintenance of the gaming facility, including licensing; and

(vii)    any other subjects that are directly related to the operation of gaming activities.

12.    The Ninth Circuit Court of Appeals has ruled that "the plain language of § 2710(d)(3)(C) confirms that its list of seven topics is exhaustive." *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024 (9th Cir. 2022) ("*Chicken Ranch*").

13.    A state's refusal to enter into a compact unless a tribe agrees to include within the compact a provision that is not within the scope of the seven subjects listed in Section 2710(d)(3)(C) constitutes a failure to engage in good faith negotiation, in violation of Section 2710(d)(3)(A). *Id.* at 1035 ("Thus, a tribal-state compact *may* include provisions relating to the seven identified topics (though it is not necessarily required to), but it *may not* include provisions that do not relate to the topics listed.") (Emphasis in original).

14.    IGRA prohibits a State and any of its political subdivisions from imposing any tax, fee, charge, or other assessment upon an Indian tribe to engage in class III gaming, 25 U.S.C. §§ 2710(d)(4), and provides that any demand by a State for direct taxation of the Indian tribe or of any Indian lands is to be considered evidence that the State failed to negotiate in good faith, 2710(d)(7)(iii)(II).

15.    After the enactment of the IGRA, certain Indian tribes in California sought to negotiate compacts with the state to permit the operation of class III gaming on their reservations. The class III games over which the tribes sought to negotiate included live house banked and percentage card games and stand-alone electronic gaming devices, such as slot machines, which were not expressly permitted under California law for any person, organization, or entity to operate or play.

16.    To address this problem, then Governor Gray Davis proposed an amendment to the California Constitution that would exempt Indian tribes from the State's constitutional prohibition on class III gaming.

17.    In March of 2000, the California voters ratified Proposition 1A, amending the California Constitution to provide: ". . . the Governor is authorized to negotiate and conclude compacts, subject to ratification by the Legislature, for the operation of slot machines and for the conduct of lottery games, and house bank and percentage card games by federally recognized Indian tribes on Indian lands in California in accordance with federal law. Accordingly, slot machines, lottery games, and banking and percentage card games are hereby permitted to be conducted and operated on tribal lands subject to those compacts." Cal. Const., art. IV, § 19(f).

18.    In order to implement Cal. Const., art. IV, § 19(f), the State Legislature enacted Cal. Gov. Code § 12012.25(d) which provides: "The Governor is the designated state officer responsible for negotiating and executing, on behalf of the state, tribal-state gaming compacts with federally recognized Indian tribes located within the State of California pursuant to the federal Indian Gaming Regulatory Act of 1988."

19.    As set forth below, pursuant to the IGRA, Cal. Const., art. IV, § 19(f), and Cal. Gov. Code § 12012.25(d), the State, in 1999, entered into class III compacts with various California Indian tribes, including the Tribe.

20.    On March 31, 2021, the United States District Court for the Eastern District of California concluded that the State had failed to negotiate in good faith with a group of five plaintiff tribes by insisting on the inclusion of provisions in the tribes' compacts that were not directly related to class III gaming activities. *Chicken Ranch Rancheria of Me-Wuk Indians v. Newsom*, 530 F. Supp. 3d 970 (E.D. Cal. 2021).

21.    On July 28, 2022, the United States Court of Appeals for the Ninth Circuit affirmed the District Court's conclusion that the State had failed to negotiate in good faith. *Chicken Ranch*, *supra*.

22.    In its ruling, the Ninth Circuit identified four provisions that it concluded did not fall within IGRA's proper subjects of negotiation and, therefore, could not be included in a valid IGRA compact, as they were not directly related to gaming. *Id.* at 1035

23.    The provisions that the Ninth Circuit specifically concluded could not be included in a class III gaming compact addressed the application of state environmental tort and child and spousal support laws. The Ninth Circuit also concluded that certain definitions insisted upon by the State were impermissibly broad. *Id.* at 1037-1039.

24.    The Ninth Circuit did not rule on the plaintiff tribes' claims challenging certain other provisions demanded by the State, including revenue sharing provisions, concluding that it was not necessary to rule on those provisions in order to determine that the State had failed to negotiate in good faith. *Id.* at 1040, fn. 4.

## GENERAL ALLEGATIONS PERTAINING TO GAMING BY THE TRIBE

### A.  1999 Tribal State Compact

25.    On September 9, 1999, the Tribe entered into a class III Tribal-State gaming compact with the State ("1999 Compact"). The 1999 Compact was ratified by the California State Legislature by statute, Cal. Gov. Code § 12012.25(a)(32). On May 5, 2000, the compact was approved by Assistant Secretary–Indian Affairs Kevin Gover. Notice of Approved Tribal-State Compacts, 65 Fed. Reg. 31189 (May 16, 2000).

26.    Pursuant to Section 11.2.1 of the 1999 Compact, the compact was to expire on December 31, 2020. On the date of expiration, the Tribe and the State were

in negotiations to conclude a new compact and the expiration date of the Compact was extended to June 30, 2022, pursuant to Addendum A of the Compact.

**B.  2021 Compact — Disapproval**

27.     On or about August 19, 2014, the Tribe began negotiating with the State to conclude a new compact that would replace the Tribe's 1999 Compact through a coalition of federally recognized California Indian tribes called the Compact Tribes Steering Committee.

28.     On or about August 10, 2021, the Tribe and the State ("Parties") reached agreement on a new compact and, on September 24, 2021, submitted the compact to the Secretary for approval.

29.     In a letter dated November 5, 2021, the Assistant Secretary – Indian Affairs disapproved the submitted compact because he found that certain provisions violated IGRA, and other provisions sought to impermissibly extend State regulatory jurisdiction to activities taking place on the Tribe's reservation land that were not directly related to gaming ("Disapproval Letter"). A true and correct copy of the Disapproval Letter is hereby incorporated by this reference and attached hereto as **Exhibit A**.

30.     The Disapproval Letter also emphasized that the broad definitions of the terms "Gaming Facility" and "Gaming Operation" in the submitted compact had the effect of extending State regulatory jurisdiction beyond the permissible scope of IGRA.

**C.  New Compact Negotiations — 2021-2024**

31.     On or about May 11, 2022, the State agreed to extend the term of the 1999 Compact to December 31, 2023.

32.     On October 20, 2022, the Parties restarted negotiations for a new compact in light of the disapproval of the previously submitted compact.

33.     The State's initial compact proposals included provisions that were the same or substantially similar to the provisions prohibited by the Ninth Circuit in

*Chicken Ranch* and provisions identified as the bases for disapproval of the compact in the Disapproval Letter.

34.     On or about July 26, 2023, the State extended the term of the compact to December 31, 2024.

35.     In January of 2024, after months of unsuccessful negotiation, the Tribe hired new legal counsel to conduct its compact negotiations.

**D.  Current Compact Negotiations**

36.     On or about January 24, 2024, the Tribe submitted a compact proposal to the State containing substantial revisions to the previously proposed compacts.

37.     On January 31, 2024, at the first negotiation session involving the Tribe's new negotiator, the Tribe informed the State that it was the Tribe's position that a significant number of the provisions in the State's most recent proposed Compact violate IGRA. In particular, the Parties negotiated over and could not reach consensus concerning the scope of the definition of "Gaming Facility," and whether the definition contained in the State's November 14, 2023 compact proposal complied with IGRA.

38.     On March 7, 2024, the Parties negotiated over and could not reach consensus on, among other topics: whether the exclusive right to engage in tribal class III gaming ("Exclusivity"), which is granted to tribes by Cal. Const. art. IV § 19(f), constituted a meaningful concession that justified the State's proposed revenue sharing provisions; whether the State's proposed provision requiring the Tribe to fund an "Impact Mitigation Fund" is permitted under IGRA and, if so, whether that additional revenue sharing obligation required separate consideration ("Meaningful Concession"); and whether inclusion of a provision requiring the Tribe to maintain and comply with a Memorandum of Understanding ("MOU") between the Tribe and the County of Madera is permitted under IGRA.

39.     On April 3, 2024, the Parties negotiated over and could not reach consensus on, among other topics: whether the State's proposed definitions of

"Gaming Facility" and "Gaming Operation" were overbroad and allowed State regulation of tribal activities beyond the scope of IGRA, such as regulation of alcohol sales and food health standards; whether the pro rata formula for determining the Tribe's contribution to the Special Distribution Fund ("SDF") and the uses thereof were permissible under IGRA, specifically 25 U.S.C. § 2710(d)(3)(C)(iii), as regulatory costs subject to reimbursement to the State or a tax prohibited by the IGRA; whether the cost of that regulation can be assessed in a way that only captures the Tribe's share of the actual cost; whether the Tribe should be required to make a payment into the SDF while a surplus covering regulatory costs exists in the SDF; whether the Tribe's payments into the Revenue Sharing Trust Fund ("RSTF") can be assessed in a way that only captures the Tribe's share of the actual cost of RSTF payments to non-gaming and limited gaming tribes; whether the State would provide the Tribe with actual or reasonably estimated costs arising from the State's gaming regulatory activities; and whether the Tribal Nation Grant Fund ("TNGF") is sufficiently similar to the RSTF to be considered a proper subject of negotiations and whether the State's repeated demand that the Tribe pay into the TNGF required separate consideration as a meaningful concession.

40.    On April 24, 2024, the Parties again negotiated and were unable to reach consensus on, among other topics: whether the pro rata formula for paying into the SDF and the uses thereof were proper under IGRA, specifically 25 U.S.C. § 2710(d)(3)(C)(iii), as regulatory costs subject to reimbursement by the State or a tax prohibited by the IGRA; whether inclusion of a requirement that the Tribe maintain and comply with a Memorandum of Understanding ("MOU") between the Tribe and the County of Madera is permitted under IGRA; whether a State proposed Impact Mitigation Fund is a proper subject of IGRA, specifically 25 U.S.C. § 2710(d)(3)(C); whether a restriction on the number of gaming devices is appropriate under IGRA; and whether indemnification or market-share protection is a proper subject of negotiation.

41. On May 29, 2024, the Parties again negotiated and were unable to reach consensus on, among other topics: whether the pro rata formula for determining the Tribe's contribution to the SDF required separate consideration as a meaningful concession; whether the State proposed Mitigation Fund was a proper subject of negotiation under IGRA, specifically 25 U.S.C. § 2710(d)(3)(C) and, if so, whether agreement to include it required separate consideration as a meaningful concession; whether a pro rata formula for calculating the RSTF payment is consistent with IGRA; and whether the TNGF is an impermissible tax.

42. On June 5, 2024, the Parties again negotiated and were unable to reach consensus on, among other topics: whether the pro rata formula for paying into the SDF proposed by the State has components that are impermissible under IGRA; whether the State's proposed revenue sharing provisions required separate consideration as a meaningful concession; and whether a progressive payment structure governing payments into the RSTF was consistent with IGRA and California State law.

43. On June 10, 2024, the Parties again negotiated and were unable to reach consensus on, among other topics: whether, in addition to continued exclusivity, a provision that would cover future trust land constituted a meaningful concession that justified the State's proposed revenue sharing provisions; whether State proposed restrictions on cashing government issued checks at the Tribe's casino is a permissible subject under IGRA; whether the State intended to provide a cost breakdown of regulatory activities supporting the SDF as consistent with 25 U.S.C. § 2710(d)(3)(C)(iii) and whether the uses of the SDF funds require separate consideration as a meaningful concession; whether payments into the RSTF above and beyond what is required under Cal. Gov. Code § 12012.90 were consistent with IGRA and California State law; and whether the Mitigation Fund was a revenue sharing provision that required separate consideration as a meaningful concession.

44.     One June 24, 2024, the Parties again negotiated and were unable to reach consensus on issues concerning: whether continued exclusivity could be guaranteed over the life of the State's proposed compact; whether continued exclusivity constituted a meaningful concession with a substantial economic benefit pursuant to 25 C.F.R. § 293.1-293.31 ("Part 293 Regulations"); whether the State had authority to offer exclusivity as a part of the negotiations; whether the Mitigation Fund is duplicative of Cal. Gov. Code § 12012.85(b); and whether the Part 293 regulations restrict the inclusion of the Tribe's MOU in the compact.

45.     Throughout the compact negotiations that took place in 2024, the Tribe repeatedly requested a further compact extension on the grounds that: the parties needed more time to complete negotiations before the Tribe's Compact terminated; the parties were making progress; both the Tribe and the State had changed lead negotiators; and the Secretary of the Interior had enacted new regulations implementing IGRA, the Part 293 Regulations, altering the criteria for approval of a compact.  The State repeatedly informed the Tribe that the State was not willing to agree to any more compact extensions.

46.     On July 9, 2024, the State submitted its last offer compact to the Tribe.

47.     On or about July 19, 2024, the Tribe informed the State that consensus could not be reached on the State's last proposal and, due to imminent termination of the compact, the Tribe submitted its last proposal to the State for consideration.

48.     On or about July 28, 2024, the State informed the Tribe that consensus could not be reached concerning the Tribe's last proposal, effectively ending negotiations on the grounds that the Parties had irreconcilable positions on material provisions of the proposed compacts.

49.     On or about August 2, 2024, the State informed the Tribe that it would agree to extend the term of the Tribe's Compact to December 31, 2025, and provided a proposed term amendment for the Tribe's consideration, which the Tribe executed and submitted to the State.

50.     More than 180 days have elapsed since the Tribe requested negotiations with the State for a new compact to replace its 1999 Compact.

### FIRST CLAIM

**(Violation of the Indian Gaming Regulatory Act—Check Cashing Provision)**

51.     The Tribe realleges each of the allegations set forth in Paragraphs 1 through 50 above and by this reference incorporates each allegation as if set forth herein in full.

52.     Throughout the Tribe's negotiations for a new compact, the State insisted that the new compact include a provision prohibiting the Tribe's gaming operation from cashing any check drawn against a federal, state, county, or city fund, including, but not limited to, Social Security, unemployment insurance, disability payments, or public assistance payments, except for checks issued to the Tribe's members.

53.     Prohibiting the Tribe from cashing checks drawn against government accounts is not a proper subject of negotiation under IGRA, because it is not "directly related to the operation of gaming activities" and the State's demand for such a provision in a new compact constituted a failure by the State to negotiate in good faith.

54.     An actual case or controversy exists between the Tribe and the State, in that the Tribe asserts that the State's insistence that the new compact include a provision that prohibits the Tribe's gaming operation from cashing checks drawn against a federal, state, county, or city fund issued to non-members constitutes a failure to negotiate in good faith because it is not a permissible topic of negotiation, while the State contends that the prohibition on check cashing does not violate IGRA.

WHEREFORE, the Tribe prays as hereinafter set forth below.

### SECOND CLAIM

**(Violation of the Indian Gaming Regulatory Act—**

**Memorandum of Understanding)**

55.    The Tribe realleges each of the allegations set forth in Paragraphs 1 through 54 above and by this reference incorporates each allegation as if set forth herein in full.

56.    Throughout the compact negotiations, the State insisted that the Compact include a provision requiring the Tribe to maintain and comply with the August 1, 2021, Amended and Restated Memorandum of Understanding between the Tribe and the County of Madera. Among other requirements, the MOU obligates the Tribe to make a variety of payments to the County.

57.    In 25 U.S.C. § 2710(d)(3)(C)(i)-(vii), Congress set forth the subjects that may be included in a class III compact. Those subjects do not include agreements with local governmental entities relating to the mitigation of the impact of tribal gaming.

58.    IGRA expressly prohibits a compact requirement that a tribe make payments to local government entities, "[N]othing in this section shall be interpreted as conferring upon a State or any of its political subdivisions authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity. No State may refuse to enter into . . . [compact] negotiations . . . based upon the lack of authority in such State, or its political subdivisions, to impose such a tax, fee, charge, or other assessment." 25 U.S.C. 2710(d)(4).

59.    In *Chicken Ranch*, the Ninth Circuit concluded that the provisions in the State's proposed compact to the plaintiff tribes requiring mitigation of alleged off-reservation environmental impacts, including the requirement that the plaintiff tribes enter into intergovernmental agreements with local governmental entities concerning mitigation of impacts of tribal gaming and the requirement that the tribes make payments to local governmental entities for mitigation of alleged impacts,

cannot be included in class III gaming compacts because they do not fall within the permissible topics of compact negotiation set forth in IGRA.

60.    By insisting that the Tribes include a provision in its new Compact compelling the Tribe to maintain and comply with the MOU, the State failed to negotiate in good faith as required by 25 U.S.C. § 2710(d)(3)(A).

61.    An actual case or controversy exists between the Tribe and the State, in that the Tribe asserts that the State's insistence that the new Compact include a provision that compels the Tribe to maintain and comply with the MOU violates IGRA because it is not a permissible topic of negotiation, while the State contends that the inclusion of a provision that compels the Tribe to maintain and comply with the MOU does not violate IGRA.

WHEREFORE, the Tribe prays as hereinafter set forth below.

## THIRD CLAIM

### (Violation of the Indian Gaming Regulatory Act—Impact Mitigation Fund)

62.    The Tribe realleges each of the allegations set forth in Paragraphs 1 through 61 above and by this reference incorporates each allegation as if set forth herein in full.

63.    25 U.S.C. § 2710(d)(3)(C) provides that a tribal-state gaming compact "may include provisions relating to … (iii) the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity."

64.    25 U.S.C. § 2710(d)(4) provides that, "[e]xcept for any assessments that may be agreed to under paragraph (3)(C)(iii) of this subsection, nothing in [the IGRA] shall be interpreted as conferring upon a State or any of its political subdivisions authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity."

65.    The only exception to the prohibition on the imposition of a tax, fee, charge, or other assessment is if the tribe agrees to the revenue sharing provision in exchange for a meaningful concession: something of value to the tribe that is directly related to gaming activity, that carries out the purposes of IGRA, and is not a subject over which the state is otherwise obligated to negotiate under IGRA. *Chicken Ranch*, at 1048; 25 C.F.R. § 293.2(h).

67.    Cal. Gov. Code § 12012.85(b) provides that SDF monies may be used for "[g]rants, including any administrative costs, for the support of state and local government agencies impacted by tribal government gaming," and Cal. Gov. Code § 12012.85(g) establishes that an "appropriation for the support of local government agencies impacted by tribal gaming" is authorized once shortfalls in the RSTF and problem gambling programs have been funded, and State regulatory costs have been reimbursed, and thus the Impact Mitigation Fund creates multiple and duplicative revenue sharing obligations to local governments of the State.

68.    By demanding that the Tribe pay 2% of the net win from all machines in excess of 2000 machines annually into an Impact Mitigation Fund, the State attempted to impose a tax, fee, charge, or assessment on the Tribe to engage in a class III activity.

69.    The State failed to provide a meaningful concession to the Tribe in exchange for the Impact Mitigation Fund payment provision and the multiple and duplicative revenue sharing obligations it imposes on the Tribe.

70.    By demanding that the Tribe agree to include a provision requiring the Tribe to pay 2% of the Net Win from all machines in excess of 2000 machines annually into an Impact Mitigation Fund and disperse money from the fund to local governmental entities to mitigate alleged impacts from the Gaming Facility without providing a meaningful concession to the Tribe, the State violated 25 U.S.C. § 2710(d)(4) and thereby failed to negotiate in good faith as required by 25 U.S.C. § 2710(d)(3)(A).

71.    An actual case or controversy exists between the Tribe and the State, in that the Tribe asserts that the State's insistence that the new Compact include the Impact Mitigation Fund provision without providing a meaningful concession to the Tribe violates 25 U.S.C. § 2710(d)(4), while the State contends that the inclusion of the Impact Mitigation Fund provision in the Tribe's compact does not violate IGRA.

WHEREFORE, the Tribe prays as hereinafter set forth below.

## FOURTH CLAIM

**(Violation of the Indian Gaming Regulatory Act— Special Distribution Fund)**

72.    The Tribe realleges each of the allegations set forth in Paragraphs 1 through 71 above and by this reference incorporates each allegation as if set forth herein in full.

73.    25 U.S.C. § 2710(d)(3)(C) provides that a tribal-state gaming compact "may include provisions relating to … (iii) the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity."

74.    25 U.S.C. § 2710(d)(4) provides that, "[e]xcept for any assessments that may be agreed to under paragraph (3)(C)(iii) of this subsection, nothing in [the IGRA] shall be interpreted as conferring upon a State or any of its political subdivisions authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity."

75.    The only exception to the prohibition on the imposition of a tax, fee, charge, or other assessment is if the tribe agrees to the revenue sharing provision in exchange for a meaningful concession: something of value to the tribe that is directly related to gaming activity, that carries out the purposes of IGRA, and is not a subject over which the state is otherwise obligated to negotiate under IGRA. *Chicken Ranch*, at 1048, 25 C.F.R. § 293.2(h).

76.     Throughout the negotiations, the State insisted on  the inclusion of a provision requiring the Tribe to "pay to the State for deposit into the Special Distribution Fund created by the Legislature on a pro rata basis the State's 25 U.S.C. § 2710(d)(3)(C) costs incurred for purposes consistent with IGRA, including for the performance of all its duties under this Compact, the administration and implementation of tribal-state Class III Gaming compacts and Secretarial Procedures, and funding for the Office of Problem Gambling, as determined by the monies appropriated in the annual Budget Act each fiscal year to carry out those purposes (Appropriation)."

77.     The "pro rata share" to be paid by the Tribe to the State under the State's formula is not based on the actual costs the State incurs in regulating the Tribe's class III gaming activities, but, rather, on what the California Legislature arbitrarily appropriates to the State Gaming Agency.

78.     The amounts demanded by the State for payment into the SDF are more than is necessary to defray the State's costs of regulating the Tribe's class III gaming activities under the Compact and, therefore, constitutes an impermissible tax, fee, charge, or other assessment in violation of 25 U.S.C. § 2710(d)(4) and is not consistent with the IGRA.

79.     The State failed to offer a meaningful concession to the Tribe in exchange for the payments into the SDF that are more than is necessary to defray the State's costs of regulating the Tribe's class III gaming activities.

80.     By demanding that the Tribe agree to include in the Compact a requirement that the Tribe pay into the SDF more than is necessary to defray the State's costs of regulating the Tribe's class III gaming, and failing to offer a meaningful concession to the Tribe, the State sought to impose a tax, fee, charge or other assessment on the Tribe's Gaming Activities in violation of IGRA and thereby failed to negotiate in good faith as required by 25 U.S.C. § 2710(d)(3)(A).

81.     An actual case or controversy exists between the Tribe and the State, in that the Tribe asserts that the State's insistence that the Tribe pay into the SDF more than is necessary to defray the State's costs of regulating the Tribe's class III gaming, and failing to offer a meaningful concession to the Tribe, violates 25 U.S.C. § 2710(d)(4), while the State contends that the State's insistence on the SDF provision does not violate IGRA.

WHEREFORE, the Tribe prays as hereinafter set forth below.

## FIFTH CLAIM

### (Violation of the Indian Gaming Regulatory Act—
### Revenue Sharing Trust Fund)

82.     The Tribe realleges each of the allegations set forth in Paragraphs 1 through 81 above and by this reference incorporates each allegation as if set forth herein in full.

83.     25 U.S.C. § 2710(d)(3)(C) provides that a tribal-state gaming compact "may include provisions relating to … (iii) the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity."

84.     25 U.S.C. § 2710(d)(4) provides that, "[e]xcept for any assessments that may be agreed to under paragraph (3)(C)(iii) of this subsection, nothing in [the IGRA] shall be interpreted as conferring upon a State or any of its political subdivisions authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity."

85.     The only exception to the prohibition on the imposition of a tax, fee, charge, or other assessment is if the tribe agrees to the revenue sharing provision in exchange for a meaningful concession: something of value to the tribe that is directly related to gaming activity, that carries out the purposes of IGRA, and is not a subject

over which the state is otherwise obligated to negotiate under IGRA. *Chicken Ranch*, at 1048; 25 C.F.R. § 293.2(h).

86.    Throughout the negotiations, the State insisted on the inclusion of provisions in the Tribe's new Compact that required the Tribe to pay an amount in excess of the Tribe's proportionate share of the Revenue Sharing Trust Fund necessary to distribute $1.1 million to each tribe eligible to receive distributions from the RSTF as required by State law.

87.    In the course of the more recent rounds of compact negotiations, the State demanded that the Tribe pay an increasing percentage (2% - 5.5%) of the Tribe's net win from gaming devices operated in excess of 350 devices as its contribution to the RSTF.

88.    On or about June 5, 2024, the Tribe demonstrated to the State that the State's formula exceeded the Tribe's proportionate share of the RSTF payments necessary to distribute $1.1 million to each eligible tribe and proposed a formula that would obligate the Tribe only pay its proportionate share of the RSTF.

89.    On or about June 5, 2024, the State agreed to the Tribe's proposed formula for calculating the RSTF payment, but simultaneously demanded that the Tribe make a supplementary RSTF payment of an increasing percentage (2.5% - 7%) of the net win from gaming devices operated in excess of 2000 devices.

90.    The State explicitly acknowledged that the supplementary RSTF payment insisted upon by the State was not necessary to distribute $1.1 million to each eligible tribe.

91.    The State explicitly acknowledged that the supplementary RSTF payment was intended to provide an additional payment to non-gaming and limited-gaming tribes above and beyond the $1.1 million RSTF payments made to non-gaming and limited-gaming tribes.

92.    By demanding that the Tribe pay in excess of the Tribe's proportionate share of the RSTF payments necessary to distribute $1.1 million to each tribe eligible

to receive distributions from the RSTF, the State sought to impose a tax, fee or assessment on the Tribe that is impermissible under 25 U.S.C. §2710(d)(4).

93.    By demanding that the Tribe make a new, supplementary payment into the RSTF, the State sought to impose a tax, fee or assessment on the Tribe that is impermissible under 25 U.S.C. §2710(d)(4).

94.    The State failed to offer a meaningful concession to the Tribe in exchange for the supplementary payment into the RSTF demanded by the State.

95.    The State, therefore, failed to negotiate in good faith as required by 25 U.S.C. § 2710(d)(3)(A).

96.    An actual case or controversy exists between the Tribe and the State, in that the Tribe maintains that the State's demand that the Tribe make a supplementary RSTF payment without providing a meaningful concession to the Tribe violates 25 U.S.C. § 2710(d)(4), while the State contends that the State's demand that the Tribe make a supplementary RSTF payment does not violate IGRA.

WHEREFORE, the Tribe prays as hereinafter set forth below.

## SIXTH CLAIM

### (Violation of Cal. Const., Art. IV, § 19(f) and Cal. Gov. Code § 12012.25)

97.    The Tribe realleges each of the allegations set forth in Paragraphs 1 through 96 above and by this reference incorporates each allegation as if set forth herein in full.

98.    The Constitution of the State of California, Cal. Const., art. IV, § 19(f) and California statutory law, Cal. Gov. Code § 12012.25, incorporate the IGRA and place a mandatory duty on the Governor of the State of California to negotiate tribal-state gaming compacts with California Indian tribes in good faith, in accordance with the Indian Gaming Regulatory Act.

99.    As more particularly described in the Tribe's First through Fifth Claims, set forth above, the Governor failed to conduct tribal-state compact negotiations with the Tribe in good faith, in violation of the IGRA. Violations of the

good faith negotiations requirements of the IGRA also constitute violations of Cal. Const., art. IV, § 19(f) and Cal. Gov. Code § 12012.25, which require the Governor to negotiate tribal-state gaming compacts in good faith.

100.   The Tribe is entitled to an order from this Court, declaring that the Governor engaged in bad faith compact negotiations with the Tribe in violation of Cal. Const., art. IV, § 19(f) and Cal. Gov. Code § 12012.25 and directing the Governor to resume compact negotiations with the Tribe and engage in good faith compact negotiations with the Tribe pursuant to the IGRA.

101.   An actual case or controversy exists between the Tribe and the State, in that the Tribe asserts that the State failed to engage in good faith compact negotiations with the Tribe, in violation of Cal. Const., art. IV, § 19(f) and Cal. Gov. Code § 12012.25, while the State contends that it did not fail to engage in good faith compact negotiations with the Tribe in violation of Cal. Const., art. IV, § 19(f) and Cal. Gov. Code § 12012.25.

WHEREFORE, the Tribe prays as hereinafter set forth below.

## SEVENTH CLAIM

### (Violation of Cal. Gov. Code § 12012.75, Cal. Gov. Code § 12012.85, Cal. Gov. Code § 12012.90, and Cal. Gov. Code § 12019.35)

102.   The Tribe realleges each of the allegations set forth in Paragraphs 1 through 101 above and by this reference incorporates each allegation as if set forth herein in full.

103.   Cal. Gov. Code § 12012.75 establishes the RSTF, "pursuant to the terms of tribal-state gaming compacts for the purpose of making distributions to eligible recipient Indian tribes . . . in accordance with distribution plans specified in tribal-state gaming compacts."

104.   Cal. Gov. Code § 12012.85(d) establishes that the SDF will cover shortfalls in the RSTF and Cal. Gov. Code § 12012.85(g)(1)-(3) establishes that

funding the RSTF takes priority over funding the State's regulatory functions as appropriated in the annual Budget Act.

105. Cal. Gov. Code § 12012.90(b) establishes that the "Legislature shall transfer from the [SDF] to the [RSTF]" two hundred seventy-five thousand dollars ($275,000) for each eligible recipient Indian tribe for each quarter, "for a total not to exceed one million one hundred thousand dollars ($1,100,000) for the entire fiscal year," and Cal. Gov. Code § 12012.90(c) establishes that surplus monies in the RSTF "shall remain in the [RSTF] for disbursement in future years . . . ."

106. Cal. Gov. Code § 12019.35(a) establishes "the [TNGF] for the receipt and deposit of moneys received by the state from Indian tribes pursuant to the terms of tribal-state gaming compacts," and establishes that monies "in the fund shall be available, upon appropriation by the Legislature, for the discretionary distribution of funds to nongaming tribes and limited-gaming tribes . . . ."

107. Throughout the negotiations, the State's proposed compacts persistently, and over repeated objections by the Tribe, included Section 5.1, which provided that excess RSTF funds "shall remain in the [RSTF] available for disbursement in future years, or deposited into the [TNGF], but shall not be used for purposes other than the [RSTF] or the [TNGF]."

108. Throughout the negotiations, the State insisted on the inclusion of provisions in the Tribe's new Compact that required the Tribe to pay an amount in excess of the Tribe's proportionate share of the Revenue Sharing Trust Fund necessary to distribute $1.1 million to each tribe eligible to receive distributions from the RSTF as required by State law.

109. On or about June 5, 2024, the Tribe demonstrated to the State that the State's formula exceeded the Tribe's proportionate share of the RSTF payments necessary to distribute $1.1 million to each eligible tribe pursuant to Cal. Gov. Code §§ 12012.75 and 12012.90 and proposed a formula that would obligate the Tribe only pay its proportionate share of the RSTF.

110.   On or about June 5, 2024, the State agreed to the Tribe's proposed formula for calculating the RSTF payment, but demanded, in exchange for the change in the formula and in lieu of the Tribe explicitly authorizing excess RSTF funds to be deposited into the TNGF, that the Tribe make a supplementary RSTF payment of an increasing percentage (2.5% - 7%) of the net win from gaming devices operated in excess of 2000 devices.

111.   The State explicitly acknowledged that the supplementary RSTF payment insisted upon by the State was not necessary to distribute $1.1 million to each eligible tribe and would be distributed in excess of the $1.1 million restriction established in Cal. Gov. Code § 12012.90.

112.   By demanding that the Tribe pay in excess of the Tribe's proportionate share of the RSTF payments necessary to distribute $1.1 million to each tribe eligible to receive distributions from the RSTF, the State sought to impose obligations on the Tribe that are inconsistent with State law mandates governing distribution of the SDF, RSTF, and TNGF.

113.   By demanding that the Tribe make a new, supplementary payment into the RSTF, the State sought to impose obligations on the Tribe that are not authorized by State law and are inconsistent with State law mandates governing distribution of the SDF, RSTF, and TNGF.

114.   An actual case or controversy exists between the Tribe and the State, in that the Tribe maintains that the State's demand that the Tribe either make payments into the RSTF under the State's proposed formula and  explicitly authorize excess RSTF funds to be deposited into the TNGF or make a supplementary RSTF payment violates Cal. Const., Art. IV, § 19(f), Cal. Gov. Code § 12012.25, and Cal. Gov. Code § 98005 and the good faith requirements established therein, while the State contends that the State's demand that the Tribe make payments into the RSTF under the State's proposed formula and explicitly authorize excess RSTF funds to be

deposited into the TNGF or make a supplementary RSTF payment does not violate the State statutory framework governing the SDF, RSTF, and TNGF funds.

WHEREFORE, the Tribe prays as hereinafter set forth below.

## EIGHTH CLAIM

### (Violation of Cal. Gov. Code § 12012.85)

115.    The Tribe realleges each of the allegations set forth in Paragraphs 1 through 114 above and by this reference incorporates each allegation as if set forth herein in full.

116.    Cal. Gov. Code § 12012.85(c) establishes that one of several uses of the SDF is reimbursement "for regulatory costs incurred by the State Gaming Agency and the Department of Justice in connection with the implementation and administration of tribal-state gaming compacts."

117.    Cal. Gov. Code § 12012.85(d) establishes that one of several uses of the SDF is to compensate for "shortfalls that may occur in the [RSTF]," which "shall be the priority use of moneys in the [SDF]."

118.    Cal. Gov. Code § 12012.85(g)(1)-(3) provides that reimbursement of State regulatory costs is the third priority in a hierarchy of uses, after funding shortfalls in the RSTF and funding programs treating gambling addiction and thereby establishes that principal objective of the SDF statute governing the fund is not reimbursement of regulatory costs, but, rather, funding the RSTF and gambling prevention programs.

119.    *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1113-1114 (9th Cir. 2003) ("Coyote Valley II") establishes that the SDF is a revenue sharing fund, lawful under 25 U.S.C. § 2710(d)(3)(C)(vii). The *Coyote Valley II* court did not conclude that the SDF is lawful under 25 U.S.C. § 2710(d)(3)(C)(iii).

120.    Throughout the negotiations, the State insisted on the inclusion of Section 4.1, requiring the Tribe to "pay to the State for deposit into the Special Distribution Fund created by the Legislature on a pro rata basis the State's 25 U.S.C.

§ 2710(d)(3)(C) costs incurred for purposes consistent with IGRA, including for the performance of all its duties under this Compact, the administration and implementation of tribal-state Class III Gaming compacts and Secretarial Procedures, and funding for the Office of Problem Gambling, as determined by the monies appropriated in the annual Budget Act each fiscal year to carry out those purposes (Appropriation)."

121.    Throughout the negotiations, the State insisted that the SDF payment in Section 4.1 of the compact was authorized solely under 25 U.S.C. § 2710(d)(3)(C)(iii), notwithstanding the fact that the enumerated uses in Section 4.1 and the enumerated uses of the SDF fund established in Cal. Gov. Code § 12012.85 are beyond the scope of 25 U.S.C. § 2710(d)(3)(C)(iii), and would prevent the SDF from being used for, inter alia, its principal purpose of, first, funding the RSTF and, second, funding gambling prevention programs, since these uses do not fall within the scope of class III regulatory costs under 25 U.S.C. § 2710(d)(3)(C)(iii) of IGRA.

122.    By demanding that the Tribe agree to include in the Compact a requirement that the Tribe pay into the SDF pursuant to the restrictions established in 25 U.S.C. § 2710(d)(3)(C)(iii) of IGRA, the State is imposing obligations on the Tribe that conflict with the principal purposes of Cal. Gov. Code § 12012.85.

123.    An actual case or controversy exists between the Tribe and the State, in that the Tribe asserts that the State's insistence that the SDF be treated as a regulatory cost reimbursement fund, not a revenue sharing fund, is contrary to the express, enumerated uses of Cal. Gov. Code § 12012.85 and the express, enumerated uses of Section 4.1 of the State's proposed compact, and therefore violates Cal. Const., Art. IV, § 19(f), Cal. Gov. Code § 12012.25, and Cal. Gov. Code § 98005 and the good faith requirements established therein,  while the State contends that the SDF and Cal. Gov. Code § 12012.85 are within the scope of 25 U.S.C. § 2710(d)(3)(C)(iii) of IGRA.

WHEREFORE, the Tribe prays as hereinafter set forth below.

## **PRAYER FOR RELIEF**

1.      That the Court enter judgment declaring that, as to each of the above-alleged claims, the State of California failed to negotiate in good faith as required by IGRA by insisting upon the inclusion of compact provisions that are not proper subjects of negotiation under IGRA, and, therefore, failed to negotiate with the Tribe in good faith, in violation of 25 U.S.C. § 2710(d)(3)(A);

2.      That the Court enter judgment declaring that, with regard to the Third, Fourth, and Fifth Claims, the State of California was obligated to offer meaningful concessions in return for the inclusion of those revenue sharing provisions in the Tribe's new compact, and failed to offer such concessions, and, therefore, the State attempted to "impose [a] tax, fee, charge, or other assessment" upon the Tribe to engage in a class III activity, in violation of 25 U.S.C. § 2710(d)(4), and, therefore, failed to negotiate with the Tribe in good faith, in violation of 25 U.S.C. § 2710(d)(3)(A);

3.      That the Court issue an order directing the State and the Tribe to comply with IGRA's remedial procedure where a state has been found to have failed to negotiate in good faith, pursuant to 25 U.S.C. § 2710(d)(7)(B)(iii)-(vii), and directing the State and the Tribe to resume compact negotiations and conclude a new compact within 60 days of the date of the Court's order pursuant to 25 U.S.C. § 2710(d)(7)(B)(iii);

4.      That the Court enter judgment declaring that the State of California failed to negotiate in good faith as required by the IGRA by insisting upon the inclusion of compact provisions that are not proper subjects of negotiations under the IGRA, and, therefore, failed to negotiate with the Tribe in good faith in violation of Cal. Const., art. IV, § 19(f) and Cal. Gov. Code § 12012.25;

5.      That the Court enter judgment declaring that the State insisted on including compact provisions relating to the Special Distribution Fund, the Revue Sharing Trust Fund, and the Tribal Nation Grant Fund that are inconsistent with

California law, and, therefore, failed to negotiate with the Tribe in good faith in violation of Cal. Const., art. IV, § 19(f) and Cal. Gov. Code § 12012.25;

6.      That the State reimburse the Indian Gaming Special Distribution Fund in an amount equal to what the State has charged that fund for its defense of this action, plus interest accrued at the same rate as California law imposes on debts owed to the State;

7.      That the Tribe be awarded its costs and reasonable attorney fees; and

8.      That the Court grants such other relief as may be deemed appropriate.


DATED: September 26, 2024

/s/ *Lester J. Marston*
_____
LESTER J. MARSTON
California State Bar No. 081030
THE LAW OFFICES OF RAPPORT AND MARSTON
AN ASSOCIATION OF SOLE PRACTITIONERS
405 West Perkins Street
Ukiah, California 95482
Telephone: 707-462-6846
Facsimile: 707-462-4235
Email: ljmarston@rmlawoffice.net
*Attorney for Plaintiff*
*Picayune Rancheria of the Chukchansi Indians*

COMPLAINT